FILED

98 JUN 12 AM 9:37

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 1 2 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

STEAK OUT FRANCHISING, INC.,        )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   CV97-H-118-NE
                                    )
HAMID BOLOOKI and STEAK ON          )
THE RUN, INC.,                      )
                                    )
        Defendants.                 )

MEMORANDUM OF DECISION

The court has before it the March 2, 1998 motion for summary judgment filed by plaintiff.  Pursuant to the court's March 2, 1998 order, the motion was deemed submitted for decision, without oral argument, as of May 8, 1998.

Plaintiff filed its verified complaint for damages and injunctive relief on January 15, 1997 to enjoin defendants from continued use of plaintiff's trademarks and trade dress. Plaintiff asserts that it is entitled to a permanent injunction and is entitled to summary judgment on defendants' counterclaims.

In support of is motion for summary judgment, plaintiff filed a brief and evidentiary submissions on March 2, 1998,[1] supplemental evidentiary submissions on April 17, 1998 and a supplemental brief on April 24, 1998.  In opposition to the

---

[1]The plaintiff's evidentiary submissions include various affidavits and court pleadings.

motion for summary judgment, defendants filed evidentiary submissions on May 1, 1998[2] and a brief on May 8, 1998.

**Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.

---

[2]The defendants' evidentiary submissions include the affidavit and deposition of Hamid Bolooki.

Celotex, 477 U.S. at 324. The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. If the moving party makes such a showing, the

burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. If the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. The affirmative showing may be accomplished by reference to any combination of the following: pleadings; deposition testimony of

4

a party or its witness; affidavits; responses to interrogatories or failure to respond to interrogatories; requests for admission and responses thereto; and other exchanges between the parties that are in the record. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991); see also Celotex, 477 U.S. at 332 (Brennan, J., dissenting). If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

**Relevant Facts**

The following facts in this case are undisputed or where disputed are viewed in light most favorable to the defendants. Plaintiff Steak-out Franchising, Inc. is a franchisor of Steak Delivery restaurants. Defendant Steak on the Run, Inc., ("SORI"), is a former franchisee that operated two Steak-Out franchises in Miami, Florida. Defendant Hamid Bolooki, a college graduate with some graduate school education, has been the President of SORI since 1992.

On May 11, 1992 and May 21, 1993, SORI executed franchise

agreements to operate the two restaurants in Miami, Florida.  See exhibits B and C to plaintiff's complaint.  The two restaurants are referred to as the Doral location, Store No. 1108, and the West Gables location, Store No. 1109.  Bolooki guaranteed that SORI would fully perform all covenants, payments, agreements and undertakings of SORI under the franchise agreements.  See id. Bolooki formed Doral Steak on the Run, Inc. and West Gables Steak on the Run, Inc. and these two entities actually operated the restaurants.  See Bolooki depo. pp. 53-59.

In late 1996, SORI was behind on royalty fees and promotion and marketing fees and failed to provide required financial statements to Steak Out.  See exhibit A to plaintiff's 3/28/97 preliminary injunction motion, Ross 1/10/97 affidavit, ¶¶ 13-14. Defendants were notified by letters in September and October of 1996 that SORI was delinquent in franchisee responsibilities and that if they failed to comply with their obligations that SORI would be terminated as a Steak Out franchisee.  See exhibit D to plaintiff's complaint.

In October of 1996, plaintiff terminated defendants.  See Ross 1/10/97 affidavit, ¶ 17.  Plaintiff orally agreed to allow defendants to holdover under the agreements in order to cure the defaults; however, defendants did not execute the requisite

6

documents for the holdover agreement to take effect. See id. at ¶¶ 18-20. Defendants were notified that they were to de-identify the franchise units by December 7, 1996. See exhibit B to plaintiff's 3/28/97 preliminary injunction motion, Sanders affidavit, ¶ 5. Defendants continued to operate their restaurants using Steak-Out's trademarks and symbols. See id. at ¶¶ 7-12. Plaintiff Steak-Out filed this action to enjoin the continued use of the trademarks and for unpaid fees on January 15, 1997.

On May 6, 1997, the court held a hearing and on May 27, 1997 the court entered a consent order granting plaintiff's motion for preliminary injunction and enjoining defendants from breach of the post-termination obligations in the franchise agreements, including their continued operation of the restaurants. On May 15, 1997 defendants filed a counterclaim against plaintiff. Count I of the counterclaim is to compel a rebate of advertising fees and for return of advertising fees due to an alleged misapplication of the fees. Count II is for damages for alleged misrepresentations regarding the costs defendants would incur in building their restaurants, and the availability of training for defendants' trainees.

The parties attempted to settle the case in late 1997 and

set depositions for January of 1998. On January 20, 1998, plaintiff filed a motion for sanctions because Hamid Bolooki would not attend the scheduled depositions. On March 2, 1998, the court ordered Bolooki to appear for his deposition.

**Permanent Injunction**

Based on the evidence presented to the court prior to the May 6, 1997 injunction hearing and evidence presently before the court and based on defendants' failure to offer any evidence to refute plaintiff's claims of defendants' use of plaintiff's trademarks and trade dress, it is clear that plaintiff is entitled to a permanent injunction based on the issues covered in the May 27, 1997 consent order granting preliminary injunction. A separate order granting a permanent injunction will be entered.

**Plaintiff's Claim for Damages**

Plaintiff claims it is entitled to damages under the Lanham Act for the six-month period from January 1, 1997 to May 26, 1997 that defendants used Steak-Out's symbols without authorization. Pursuant to the affidavit of Michael T. Anderson, Steak-Out's Vice-President, Finance and Accounting, the estimated royalty payments for the six month period of unauthorized use were $18,174.92. See plaintiff's exhibit B, Anderson affidavit ¶¶ 1, 10. Anderson estimated these payments based on the same period

one year earlier, that is from January to May of 1996.  See id. Anderson also estimates the promotion and development fund revenue lost by plaintiff during this six-month holdover period. While the court finds it reasonable and established in the Eleventh Circuit to determine damages incurred by a victim of trademark misuse by the use of lost royalties, the court finds no precedent nor finds it reasonable to use the lost promotion and development fees to determine damages.  See Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1519-1520 (11th Cir. 1990); Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1986).  The judgment to be entered will include $18,174.92 in damages for violation of the Lanham Act.  In view of the fact that the court is awarding liquidated damages for the defendant's breach of the franchise agreement, the court elects not to treble the damages as provided by the Lanham Act.

  Plaintiff also claims liquidated damages amounting to $51,301.32 under the franchise agreement.  The franchise agreement governing the Doral franchise unit provides that upon termination for any default by the franchise owner, the franchise owner will pay plaintiff liquidated damages of two years' royalty

payments.[3]  See exhibit B § 14(b).[4]  The Doral franchise agreement was terminated because of SORI's breach as has been established in the issuance of the preliminary injunction and permanent injunction.  Pursuant to the affidavit of Michael T. Anderson, the defendants' royalty payments due for the Doral franchise unit for the 24 month period in 1995 and 1996 was $51,301.32.  See plaintiff's exhibit B-2.  The judgment to be awarded will include $51,301.32 in liquidated damages.

Plaintiff also claims attorneys' fees in the amount of $25,000.  The defendants agreed to reimburse plaintiff's costs in enforcing its rights under the franchise agreement including reasonable attorneys' fees.  See exhibit B § 14(b), ¶ 4 to

---

[3]The West Gables franchise agreement does not contain a liquidated damage provision.

[4]Doral Franchise Agreement, § 14(b):
>Upon the expiration, termination, or non-renewal of this Agreement, Franchise Owner shall immediately:
>>(B) pay all sums owing to Franchisor.  Upon termination for any default by Franchise Owner, such sums shall include actual and consequential damages, costs and expenses (including reasonable attorneys' fees) incurred by Franchisor as a result of the default, and shall also include, in the case of termination resulting from Franchise Owner's breach of this Agreement (as stipulated damages and not as a penalty), the greater of (i) Ten Thousand Dollars ($10,000), or (ii) an amount equal to the last twenty four (24) months continuing fees due and payable pursuant to Paragraph 5(b)(i) hereof.

10

guaranty and exhibit C § 15(b), ¶ 4 to guaranty to plaintiff's complaint. Pursuant to the affidavit of Michael T. Anderson, over a period of months while this lawsuit has been pending, plaintiff has paid out invoices for services rendered and expenses incurred from Schoel, Ogle, Benton, & Centeno totaling $12,876.21. Plaintiff has also paid out invoices for services rendered and expenses incurred from Harkleroad & Hermance totaling $11,849.88. The court finds these payments for attorneys' fees to have been reasonable and also finds reasonable the estimation of at least an additional $1,000 in attorneys' fees made by Anderson. Accordingly the court finds $25,000 for attorneys' fees reasonable. Both defendants obligated themselves to pay that amount in the franchise agreements and guaranty agreements. The judgment to be entered will include an award of $25,000 in attorney's fees.

**Counterclaim I**

Plaintiff argues that it is entitled to summary judgment on the defendant's counterclaims because defendant has set forth no evidence to substantiate the counterclaims. Defendant's first counterclaim is for breach of the franchise agreements. The court notes at the outset that though the counterclaim is brought by both SORI and Hamid Bolooki, only SORI is a proper party to

11

the breach of contract claim as it is the only party to the franchise agreement. Hamid Bolooki, as a guarantor, is not a party to the franchise agreement, and therefore not a proper party to the breach of contract counterclaim. To the extent the counterclaim is being pursued by the nonproper party Bolooki, the summary judgment in favor of plaintiff is due to be granted.[5] SORI is the proper party to bring the counterclaim; however, there is no factual basis for any such claim.

The only evidence produced by SORI in support of the breach of contract counterclaim is the deposition testimony and affidavit of Hamid Bolooki. Hamid Bolooki's deposition was taken on March 19, 1998 after several failed attempts and Bolooki signed an affidavit on May 1, 1998. In Bolooki's deposition he states that he has no knowledge of the restaurant business, is unfamiliar with the advertising board of Steak-Out, did not attend training by Steak-Out, never read the Steak-Out operations

---

[5]Plaintiff also addresses whether the two corporations actually operating the franchise units, Doral Steak on the Run, Inc. and West Gables Steak on the Run, Inc., are proper counterplaintiffs. For the same reason that Bolooki, who was not a party to the franchise agreement, is not a proper party to the counterclaim, the two operating corporations are also not proper parties to the counterclaim and to the extent that the counterclaim is being pursued by the two corporations, the summary judgment motion of plaintiff is due to be granted.

manual and did not know the financial forms required by Steak-Out. See Bolooki depo. pp. 118-119, 122, 170-172, 216-217. In his affidavit, Bolooki states that he has personal knowledge about the facts set forth in his affidavit. See Bolooki's affidavit ¶ 1. Bolooki's affidavit states facts about the advertising and business relationship between Steak-Out and the two franchise units. See Bolooki affidavit ¶¶ 3, 6-9, 11-12. A court may find an affidavit which contradicts deposition testimony a sham when the party merely contradicts the deposition testimony without any valid explanation. See Junkins v. U.S. Industries, Inc., 736 F.2d 656 (11th Cir. 1984). Here, Bolooki testifies in his deposition that he has no knowledge of the restaurant business and specifically is unfamiliar with the advertising board of Steak-Out and then in his later affidavit he states that he has personal knowledge of the specifics of the advertising of the franchise units. The court finds the testimony of Bolooki in his affidavit to be a sham as it pertains to the advertising of the franchise units because the affidavit statements contradict the earlier deposition testimony.

   Defendant's counterclaim includes a claim for a $250,000 rebate of the national advertising fees due under the franchise agreement for failure to properly administer and use advertising

funds as provided for in the agreement and for further breach of the franchise agreements. Defendant claims that it paid in to the Steak-Out advertising fund and that plaintiff has failed to maintain a meaningful national and/or regional advertising program that has resulted in less profitability to the franchise owners. Defendant further alleges that plaintiff commingled the advertising fund with its own general operation funds in violation of the franchise agreement.

In the Advertising and Marketing section of both franchise agreements, the franchisor is obliged to maintain and administer the Steak-Out Advertising Fund for national and/or regional advertising and marketing. See exhibit B § 9 and C § 10 to plaintiff's complaint. The agreement also provides that the franchisor "shall have the right" to make payments to the franchisees for local advertising. See id. This payment to franchisees, which the defendant characterizes as a rebate, is discretionary on the part of the franchisor. The defendant has offered no evidence that this rebate is mandatory. Plaintiff argues that the rebating of money is discretionary and as such it is not obligated to pay the defendant a refund. Defendant asserts that Bolooki testified that plaintiff spent no money advertising in the Miami area; however, Bolooki testified that he

14

had no knowledge of Steak-Out's advertising advisory board and did not know whether Steak-Out assisted the franchise units in advertising. <u>See</u> Bolooki depo. pp. 170-172. Defendant's claims are based on the bare assertions of Bolooki who while accusing plaintiff of mishandling advertising funds and failing to assist in advertising for the franchise units, admits to no knowledge of Steak-Out's advertising board and to no knowledge of whether or not Steak-Out assisted the franchise units in advertising. The court is satisfied that the bare assertions by Bolooki who has no personal knowledge of the activities of the plaintiff with regard to the advertising for the two franchise units does not amount to evidence sufficient to withstand the plaintiff's summary judgment motion. The defendant has offered no evidence or documentation other than the affidavit and deposition of Bolooki and this is simply insufficient without more to raise a genuine issue of material fact, especially as noted earlier since Bolooki's affidavit contradicts his deposition testimony.

**Counterclaim II**

In its second counterclaim, defendant argues that plaintiff made fraudulent representations to SORI concerning the original expenses for building the franchise units and misrepresentations about how plaintiff would provide assistance in the operation of

15

the franchise units after their opening. Again the counterclaim is brought by SORI and Hamid Bolooki. Bolooki was not a party to the franchise agreement and the negotiations surrounding the agreement were between the plaintiff and SORI. Bolooki has not alleged that he was damaged by misrepresentations as a promoter and as such has insufficiently alleged that he is a party eligible to bring the misrepresentation counterclaim against plaintiff. To the extent the counterclaim is being pursued by the nonproper party Bolooki, the summary judgment in favor of plaintiff is due to be granted.

Defendant argues that plaintiff represented that pre-opening expenses would be less than the amount SORI actually spent before the opening of the two franchise units. Bolooki testified at his deposition that Steak-Out gave him two capital requirement figures, high and low, but that Steak-Out never discussed with him that the costs would exceed these figures. See Bolooki depo. pp. 238-239. Kerry Woodward, one of the two original managers of the franchise units, stated in his affidavit that the reason the units lost money was due to delay in construction and a hurricane hitting the area and the consequences of opening later than planned. See plaintiff's exhibit C, Woodward affidavit ¶¶ 8-13. Woodward stated that SORI had to carry the salaries of two

16

managers while awaiting opening and that this was an example of the consequences of opening the franchise units later than planned. See id. Bolooki confirmed Woodward's statements in his deposition as he testified that the hurricane and carrying managers' salaries six months prior to opening hurt the franchise units' business. See Bolooki depo. pp. 244-247. Defendant has offered no evidence that Steak-Out guaranteed the costs of developing the two franchise units and Bolooki testified in his deposition that Steak-Out never guaranteed the estimates it gave SORI and confirmed Woodward's statements concerning the reasons for the cost overruns. There is simply no basis for the claim that Steak-Out misrepresented the costs of developing the two franchise units and Bolooki's testimony specifically contradicts this claim.

Defendant also asserts that plaintiff misrepresented the assistance it would give to SORI in the operation of the two franchise units. Defendant first asserts that plaintiff did not provide sufficient support to SORI prior to the franchise openings; however, in his deposition Bolooki testified to several different aspects of assistance that plaintiff provided to SORI prior to the franchise openings. Bolooki testified that David Martin, Steak-Out's owner, visited proposed restaurant sites

several times and discussed the future of Steak-Out.  See Bolooki depo. pp. 198-201.  Bolooki testified that someone from Steak-Out helped him find restaurant locations and assisted with the designing of the restaurants.  See id. at 201-207.  Bolooki testified that Steak-Out provided eight to twelve weeks training for the two managers of the units and provided SORI with Steak-Out's Confidential Operations Manual.  See id. at 213-216.  Bolooki testified that he is a realtor with no knowledge of the restaurant business and is unable to define adequate training for managers and that only subsequent to the opening of the units did he consider the two managers' training inadequate.  See id. at 118-119.  Kerry Woodward, one of the two original managers of the franchise stores, stated in his affidavit that he was adequately trained as a Steak-Out manager after attending a twelve-week Steak-Out training program and receiving training at the specific unit at which he worked.  See plaintiff's exhibit C, Woodward affidavit ¶¶ 3-6.

   Defendant also asserts that plaintiff did not assist SORI in the ongoing operations of the two franchise units.  Bolooki testified at his deposition that Steak-Out provided operating information at franchise meetings and in weekly key indicator reports and sent inspectors to the two stores who reported

18

results.  See id. at 173-184.  It is clear to the court that Bolooki's testimony of the activities of plaintiff prior to the openings of the two franchise units and during their operation demonstrates that plaintiff did not make misrepresentations to SORI about the assistance it would provide SORI prior to the franchise openings and during their operation.  SORI has put forth no evidence to substantiate its claims of misrepresentation on the part of plaintiff.  In fact, defendant has only put forth evidence to the contrary that plaintiff did provide assistance to the two units in many forms.

   The court is satisfied that there is no genuine issue of material fact and that defendant has failed to set forth evidence sufficient to withstand the motion for summary judgment filed by the plaintiff.  That motion as to all counterclaims by defendant is due to be granted.  A separate final order will be entered.

   DONE this 12th day of June, 1998.

*[signature: James H. Hancock]*
SENIOR UNITED STATES DISTRICT JUDGE